WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fidel Bernard Davis, | No. CV-25-00203-TUC-RM (BGM) |
| Plaintiff, | **ORDER** |
| v. | |
| Hilton Resorts Corporation, | |
| Defendant. | |

On February 26, 2026, Magistrate Judge Bruce G. Macdonald issued a Report and Recommendation ("R&R") (Doc. 34), recommending that this Court deny Defendant's Motion to Compel Arbitration (Doc. 25). Defendant filed an Objection (Doc. 35) and Plaintiff filed a Response (Doc. 36). The Court will adopt the R&R in part and modify it in part as set forth herein, and deny Defendant's Motion to Compel Arbitration.

## I.    Background

Plaintiff was hired by Diamond Resorts International ("Diamond") in 2013. (Doc. 25 at 2.) On August 20, 2018, Plaintiff and Diamond entered into an Arbitration Agreement, which provided that Diamond and Plaintiff would "utilize binding arbitration to resolve all disputes that have arisen or that may arise out of the employment context[.]" (Doc. 25-1 at 2.) The Arbitration Agreement further provided that Diamond, and "its parents, subsidiaries, affiliates, predecessors, successors and assigns" would have the right to enforce the Arbitration Agreement. (*Id.*) The Hilton Resorts Corporation, d.b.a. Hilton Grand Vacations ("Hilton"), acquired Diamond in 2021. (Doc. 25 at 2.) Plaintiff asserts

that he was subject to retaliation after voicing concerns to Hilton management about workplace safety and other workers, and after requesting disability accommodation and taking leave under the Family and Medical Leave Act. (Doc. 16 at 3-4.) Plaintiff's employment with Hilton ended in 2024. (*Id.*)

Plaintiff initiated this action against Hilton on April 30, 2025. (Doc. 1.) Plaintiff filed the operative First Amended Complaint ("FAC") on August 8, 2025. (Doc. 16.) He asserts thirteen causes of action arising from his employment with Hilton, including: (i) discrimination under the Americans with Disabilities Act; (ii) interference and retaliation under the Family and Medical Leave Act; (iii) discrimination and retaliation under Title VII of the Civil Rights Act of 1964; (iv) age discrimination under the Age Discrimination in Employment Act; (v) discrimination under the Civil Rights Act of 1866; (vi) wrongful discharge under the Arizona Employment Protection Act; (vii) constructive discharge under A.R.S. § 23-1502; (viii) retaliation under the Americans with Disabilities Act; (ix) duplicate interference and retaliation claims under 29 C.F.R. § 825.220; (x) civil conspiracy under 42 U.S.C. § 1985; (xi) invasion of privacy under Arizona law; (xii) negligent supervision under Arizona law; and (xiii) defamation under Arizona law. (Doc. 16 at 5-7.)

Defendant Hilton filed its Motion to Compel Arbitration on September 5, 2026. (Doc. 25.) In the Motion to Compel Arbitration, Hilton contends that the Arbitration Agreement entered into between Diamond and Plaintiff is enforceable, that Hilton may enforce the Agreement as Diamond's successor, and that the Agreement covers all claims set forth in Plaintiff's FAC. (*Id.*) In his R&R, Judge Macdonald rejected several arguments Plaintiff made in response to the Motion to Compel Arbitration, finding a declaration submitted to authenticate the Agreement was valid, that the Agreement was neither procedurally nor substantively unconscionable, that matters of public policy did not affect the validity of the Agreement, and that Plaintiff had failed to show waiver of the right to arbitration. (Doc. 34.)

Judge Macdonald did conclude, however, that Hilton lacks the ability to enforce the

Agreement because Hilton is a nonsignatory to it. (*Id.* at 12-16.) Judge Macdonald discussed *Henderson v. Moskowitz*, 579 P.3d 869, 871 (Ariz. 2025), citing its statement that "[i]n Arizona, '[a]bsent some exception to the usual rule, a non-signatory may not enforce contract provisions.'" (*Id.* at 14.) Judge Macdonald highlighted the lack of any Arizona cases in which a nonsignatory to an employment-related arbitration agreement has been permitted to enforce the terms of the agreement against a plaintiff signatory where the plaintiff's claims did not arise from the underlying agreement. (*Id.*) Furthermore, Judge Macdonald rejected Hilton's arguments that it assumed Diamond's contractual rights by acquiring Diamond, that Hilton was a third-party beneficiary to the contract, or that Hilton became a successor in interest to the contract by acquiring Diamond. (*Id.* at 15-16.) In its Objection, Hilton argues that Judge Macdonald misapplied *Henderson* and incorrectly failed to find that it is a successor to Diamond. (Doc. 35.)

## II.   Standard of Review

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  *Id.*  The advisory committee's notes to Rule 72(b) of the Federal Rules of Civil Procedure state that, "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" of a magistrate judge.  Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition.  *See also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error."); *Prior v. Ryan*, CV 10-225-TUC-RCC, 2012 WL 1344286, at *1 (D. Ariz. Apr. 18, 2012) (reviewing for clear error unobjected-to portions of Report and Recommendation).

## III.   Unobjected-to Portions of R&R

The Court has reviewed the unobjected-to portions of the R&R, and finds no error.

- 3 -

Accordingly, those portions of the R&R will be adopted.

## IV.   Defendant's Objection

In its Objection to the R&R, Hilton challenges Judge Macdonald's reading of *Henderson v. Moskowitz*, contending that Judge Macdonald incorrectly interpreted *Henderson* as categorically barring all nonsignatory contract enforcement under Arizona law, and that *Henderson* applies only in the forum selection clause context. (Doc. 35.) Hilton further argues that since the Agreement provides that successors may enforce it, and Hilton acquired Diamond, Hilton is a successor to Diamond and may enforce the Agreement. (*Id.*) In his Response, Plaintiff urges that the R&R was a correct application of the law. (Doc. 36.)

"Generally, the contractual right to compel arbitration may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration. But a litigant who is not a party to a contract containing an arbitration agreement may compel arbitration under that agreement if contract law in the relevant jurisdiction would allow the litigant to enforce the contract." *Olson v. FCA US, LLC*, No. 24-6527, ___ F.4th___, 2026 WL 934267 at *2 (9th Cir. Apr. 7, 2026) (internal citations and quotation marks omitted).

The "closely related party" doctrine has developed in the federal courts to "permit non-signatories to an agreement to be bound by, and to enforce, forum selection clauses where, under the circumstances, the non-signatories enjoyed a sufficiently close nexus to the dispute or to another signatory such that it was foreseeable that they would be bound." *See Firexo, Inc. v. Firexo Group Ltd.*, 99 F.4th 304, 312 (6th Cir. 2024) (quoting *Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 439 (5th Cir. 2022)). In the arbitration clause context, this same theory has been applied under the name "alternative estoppel." *See, e.g., Holder v. Bacus Foods Corp.*, No. CV-23-00763-PHX-JJT, 2023 WL 5671406 at *7 (D. Ariz. Sept. 1, 2023) (citing *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798–99 (8th Cir. 2005)).

The Arizona Supreme Court has rejected the adoption of the closely related party

doctrine both in the context of forum selection clauses, where the doctrine is generally applied, *Henderson v. Moskowitz*, 579 P.3d 869 (Ariz. 2025), and in the context of a contractual limitation provision, *JTF Aviation Holdings Inc. v. CliftonLarsonAllen LLP*, 472 P.3d 526 (Ariz. 2020). In *Henderson*, the Court noted the distinction between the closely related party doctrine and the alternative estoppel theory, and stated that in the *Henderson* opinion it considered "only the closely related party doctrine." 579 P.3d at 871 n.2.

Arizona courts have allowed nonsignatories to compel arbitration using the alternative estoppel theory, but the circumstances under which this has been done are limited. *See Carey v. K & M Seafood Fin., LLC*, No. 1 CA-CV 13-0357, 2014 WL 6778859 (Ariz. Ct. App. Dec. 2, 2014). First, enforcement of an arbitration clause against a nonsignatory has been allowed where "the signatory's claims arise out of and relate directly to the written agreement." *Id.* (citing *Sun Valley Ranch 308 Ltd. P'ship ex rel. Englewood Props., Inc. v. Robson*, 294 P.3d 125 (Ct. App. 2012)). Second, enforcement of an arbitration clause against a nonsignatory has been allowed where the plaintiff has invoked an alter ego theory against the defendants, because the plaintiff has "essentially invited the defendant to step into the shoes of the contracting parties." *Henderson*, 579 P.3d at 872 (citing *Sun Valley Ranch*, 294 P.3d 125).

Here, Hilton does not argue that the facts of this case are congruent with either of the two circumstances in which Arizona courts have allowed a nonsignatory to use the theory of alternative estoppel, nor could it; Plaintiff's claims do not arise out of the Agreement, and he does not invoke an alter ego theory. Hilton instead argues that the R&R misinterpreted *Henderson* as standing for the proposition that nonsignatories are categorically barred from enforcing an arbitration clause against a signatory. (Doc. 35 at 3-4.) The Court agrees with Hilton that the R&R is incorrect to the extent it asserts that *Henderson* stands for the proposition that nonsignatories are categorically barred from enforcing an arbitration clause against a signatory. *Henderson* merely declined to adopt the closely related party doctrine in the context of forum selection clauses, and the Court

specifically pointed out that it was not addressing nonsignatory enforcement of arbitration clauses.

Hilton does not need any common law theory of nonsignatory contract enforcement in order to prevail on its Motion to Compel Arbitration, because the Arbitration Agreement between Plaintiff and Hilton states that those who are empowered to enforce it include Diamond, and "its parents, subsidiaries, affiliates,[1] predecessors, successors and assigns." (Doc. 25-1 at 2.) Hilton argues that under the plain language of the contract it should be considered a successor to Diamond since it acquired the company, and accordingly is empowered to enforce the Agreement. (Doc. 35 at 5.) The Agreement does not define "successor." (*See* Doc. 25-1.)

In finding successorship, "courts consider such factors as: (1) whether the business of both employers is essentially the same; (2) whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and (3) whether the new entity has the same production process, produces the same products, and basically has the same body of customers. Another factor is whether the new company has the same location and uses the same equipment." *Arizona State Carpenters Health & Welfare Tr. Fund v. Sanders*, 781 P.2d 594, 597 (1989) (citing *Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. 27 (1987)); *see also Souza v. True N. Mgmt. Servs. LLC*, No. CV-23-02588-PHX-DWL, 2024 WL 2746967 (D. Ariz. May 29, 2024) ("[A]n entity that has assumed control over another entity's operations and employees should be deemed a 'successor' for purposes of compelling arbitration.").

Here, Hilton has not addressed the above factors, and provides no information that is useful to the Court in evaluating the above factors. As such, Hilton has not met its burden of establishing arbitrability.[2] The Court will therefore modify the R&R as set forth herein,

---

[1] While Hilton does not make this argument, is possible that Hilton could be considered a parent or affiliate of Diamond. However, absent express language to the contrary, an arbitration agreement that encompasses affiliates and parents refers to companies having that status at the time the contract was signed. *Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020) (applying California law).

[2] In its Objection, another argument that Hilton advances in support of arbitration is that "[u]nder A.R.S. § 29-2206(A), a merger automatically vests the surviving entity with 'all property, rights, privileges, immunities, powers and purposes' of the merged entity, and

and deny Hilton's Motion to Compel Arbitration without prejudice to refiling a Motion that addresses the above deficiencies.

**IT IS ORDERED** that the Report and Recommendation (Doc. 34) is **adopted in part and modified in part** as set forth herein.

**IT IS FURTHER ORDERED** that Defendant's Motion to Compel Arbitration (Doc. 25) is **denied without prejudice to refiling**.

Dated this 20th day of May, 2026.

_____
Honorable Rosemary Márquez
United States District Judge

---

likewise transfers 'all obligations' to the successor." (Doc. 35 at 5.) This argument is unavailing, however, because § 29-2206(A) applies only to *mergers*, wherein the merging entity "ceases to exist," and a surviving entity continues or comes into existence." § 29-2206(A)(1)-(2). This is a separate legal process from an *acquisition*, which occurs when one entity "acquires all of one or more classes or series of interests" of another. § 29-2102(2). Here, although Hilton has not specifically stated whether Diamond continues to exist as a corporate entity, Hilton repeatedly states that in 2021 it "acquired" Diamond, suggesting that Diamond does continue to exist, and was not merged with Hilton. (Doc. 25 at 2, 11, 12; Doc. 35 at 1, 2, 5.)